**In the Matter of GAC CORPORATION et al., Debtors.**

**Bankruptcy No. 76–131–BK–NCR–H.**

United States Bankruptcy Court, S. D. Florida.

Jan. 2, 1980.

Mary Joan Hoene, Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., co-counsel for co-trustees.

G. Gordon Harrison, Pavese, Shields, Garner, Haverfield & Kluttz, Fort Myers, Fla., for Hinote Realty, Inc.

ORDER DENYING CLAIM NO. C–2307 (HINOTE REALTY, INC.)

THOMAS C. BRITTON, Bankruptcy Judge.

The case is here on the trustees' objection (C.P. No. C–35) to the Claim No. C–2307, filed by Hinote Realty, Inc. The objection was heard on March 16, 1979 (C.P. No. 59) by Judge Hyman, who died on October 1, 1979 without ruling on this matter. By stipulation between the parties on December 4, 1979 (C.P. No. C–248a), the matter was submitted to me on the transcript of the hearing and the file.

The claim is for $40,000 for "performance of services as broker in obtaining a purchaser for Gulf Plaza Shopping Center, Cape

Coral, Florida". Attached to the claim is a Purchase-Sale Contract dated May 28, 1975 between the debtor and Charles E. Hall reflecting a $25,000 deposit for the purchase by Hall of certain property for $855,000 on terms. This contract (paragraph 17) acknowledges the employment of Hinote Realty, Inc. as broker and the seller agrees to pay $40,000 as commission in the event the sale is closed. The broker is to receive $5,000 in the event of a default by the purchaser. The contract provides it is the entire agreement. (Paragraph 21) This contract is executed by the buyer and the broker, but not by the seller.

The objection (C.P. No. C–35) is that the debtor never signed the contract, did not have a listing agreement with either the corporation, or its principal, and that the sale was never closed.

It is claimant's testimony that he was approached by Stein, known to him to be a representative of the debtor, who told him the company was interested in receiving offers for the property in question, a developed 5.4A shopping center with three tenants for a price of $900,000. Claimant clearly understood that Stein "did not have the authority to accept this contract for GAC". Tr. 16.

Claimant submitted two offers, on May 14 and May 22, for lesser sums. Each was rejected. The third offer, described above, was made first by telephone and claimant tells us that Stein said:

"That is exactly what we want and I will be over there tomorrow afternoon." Tr. 13.

The contract of May 28 was prepared the following day by claimant who copied from a contract shown to him by Stein, executed by the debtor with another party for another property. Stein then said:

". . . if he (Jim Powell, Stein's superior) was here now he would sign this, but he was unavailable for signature."

The contract was signed by claimant's prospect, who had also made the first offer in the same amount which had previously been rejected. Stein called the following day to report that:

". . . he had received a telegram from a broker in the Fort Myers area that purported to offer an amount greater than what we had offered."

Claimant's prospect made no further offer and never bought the property. The foregoing version was confirmed generally by claimant's attorney, who was present on May 28.

There is no other evidence supporting the claim. Neither party produced Stein nor explained his absence other than the following statement by claimant's attorney:

"Your Honor, Mr. Stein is not here. THE COURT: He is no longer—" Tr. 48.

It is claimant's theory that Stein had apparent authority to bind the debtor to pay a commission of $40,000 to claimant if claimant procured the offer reflected in the May 28 contract, whether that offer was accepted or rejected. Tr. 7, 48–49.

I disagree. There is no evidence of an exclusive listing agreement. There is, at most, an implied non-exclusive listing. I find from the evidence that claimant was invited to submit an offer at or above a stipulated price, with the explicit understanding that there would be no obligation on the debtor's part unless the offer was accepted. It was specifically understood that the agent, Stein, had no authority to accept for the debtor and, therefore, he could not have had apparent authority to state the terms that would be acceptable to the debtor. The offer was below the stipulated price and was rejected promptly in favor of a higher offer. The prospect never bought the property. There is no suggestion that the debtor acted in bad faith or that claimant was misled, only that he was disappointed.

A broker can only recover on a contract, either express or implied, which is fully performed by him. Otherwise, his services are volunteered and there is no right to compensation. *City Builder's Finance Co. v. Stahl*, 1925, 90 Fla. 357, 106 So. 77, 78; *Dixson v. Kattel*, Fla.App.1975, 311 So.2d 827, 829; 7 *Fla.Jur.*, Brokers, § 73.

In reaching the foregoing conclusion, I have given claimant's testimony complete credence. However, I believe that claimant's principal has gilded this lily beyond the limit of credibility. I do not believe that Stein said that these terms, essentially similar to those rejected two weeks earlier, would be accepted, only that they might be accepted. Plaintiff's testimony is inconsistent with the brokerage payment provision of the May 28 contract signed by the broker, as well as his prospect. I do not believe that Stein represented that Powell's signature was all that would be required. The evidence of the debtor's general counsel convinces me that the established procedure required multiple review and approval, including his, and it is doubtful that Stein believed or said otherwise. I also note that claimant's principal, who was trying to remember events that had happened four years earlier, also testified, with equal conviction:

"Q Did you obtain the purchaser's signature on this contract?

A Yes, I did. Also, the deposit of $50,-000 that he insisted upon." Tr. 15.

The May 28 contract unambiguously shows a deposit of only half that sum, which is less than three percent of the total price and five percent of the cash required. Ten percent of the cash ($50,000) would have been a more plausible deposit for this transaction. I believe that claimant's prospect was simply not able to meet the debtor's terms.

In short, claimant has not proved the facts upon which his theory of recovery is based, but even if he had, he would not be entitled to recover. The claim is denied.

DONE and ORDERED at Miami, Florida, this 2nd day of January, 1980.